**Opinion issued August 20, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00763-CR

———————————

**JOSEPH PRESTIANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 119th District Court**
**Tom Green County, Texas***
**Trial Court Case No. B-16-0472-SA**

---

\* Pursuant to the Texas Supreme Court's docket equalization powers, this appeal was transferred from the Third Court of Appeals to this court on October 9, 2017. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases From Courts of Appeals, Misc. Docket No. 17-9128 (Tex. Sept. 28, 2017). We are unaware of any conflict between the precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**OPINION ON REHEARING**

Joseph Prestiano has moved for rehearing of our March 26, 2019 opinion and judgment. We deny his motion for rehearing, withdraw our opinion and judgment of March 26, 2019, and substitute the following opinion and judgment in its place.

Prestiano appeals from three judgments of conviction for aggravated sexual assault of a child younger than six years old. He contends that:

(1) as to the third count in the indictment only, the evidence is legally insufficient to sustain his conviction, in which the State alleged that he penetrated the child's mouth with his penis;

(2) the trial court erred in overruling his hearsay objections to a picture of sex toys drawn by the child during therapy and her counselor's testimony that the child drew the toys to explain what Prestiano did to her; and

(3) his trial lawyer rendered ineffective assistance by not lodging a hearsay objection to the therapist's testimony about the child's use of dolls and drawings to communicate the circumstances of her abuse.

We reject Prestiano's evidentiary and ineffective-assistance claims. As to the third count, we agree that the evidence is legally insufficient to prove beyond a reasonable doubt that Prestiano penetrated the child's mouth with his penis. The evidence is sufficient, however, to sustain a conviction for the lesser-included offense of aggravated sexual assault by contact. We thus reform his judgment of conviction under the third count to reflect a conviction for the lesser-included offense, affirm his other two judgments of conviction, and remand to the trial court for a new punishment hearing as to the reformed conviction for the lesser-included offense.

2

# BACKGROUND

Prestiano was indicted for three counts of aggravated sexual assault of a child younger than six years old. *See* TEX. PENAL CODE § 22.021(a)(1)(B), (a)(2)(B). All counts concerned a girl for whom he babysat. In the first count, the State alleged that Prestiano contacted the child's sexual organ with his mouth. *See id.* § 22.021(a)(1)(B)(iii). In the second count, the State alleged that he contacted the child's sexual organ with his penis. *See id.* In the third count, the State alleged that Prestiano penetrated the child's mouth with his penis. *See id.* § 22.021(a)(1)(B)(v).

Prestiano pleaded not guilty, and the case was tried to the bench.

The child was seven years old when she took the stand. She testified that Prestiano sexually abused her. Specifically, the child stated that he would touch her "private part and stuff." She clarified that by "private part" she meant her "pee-pee." Prestiano would touch her there with "weird toys and his hands" and sometimes his mouth. She said that he put the toys inside of her—that is, that Prestiano would put them in her "private part." She initially could not recall what the toys looked like but did remember drawing a picture of them in therapy. Subsequently, however, she recalled that one of the toys "was green and it vibrated when he pressed a button or something." When shown a photo of the green device and another vibrator, she recognized both. He kissed her on the mouth and on her "private part." She also said that he made her touch his "private part" sometimes, including with her finger and

3

mouth. When she referred to his "private part" she meant the body part used to go "pee-pee." She stated that he would slide his private part "up and down on my private part." She also said that "gray stuff" came out of his "private part." She said that he abused her "a lot."

The child's mother also testified. Her daughter made her outcry to her mother, disclosing Prestiano's abuse, several days after Christmas 2015, when she was five years old. The mother testified that her daughter was "a little fearful" and was "afraid she would get in trouble." The child indicated to her mother that Prestiano touched her genitals with his tongue. When the mother asked her daughter if "she wanted to see a policeman" about the abuse, the child "started crying and said that she didn't want to be arrested." Her mother contacted Child Protective Services so that a uniformed officer would not be directly involved. Her daughter was interviewed by a child advocate, while a police officer listened in from another room.

The child subsequently began seeing a therapist, Vickie Purdy, who likewise testified. Purdy is a licensed professional counselor. She treated the child weekly from February through April 2016. Purdy stated that the child "had a lot of anxiety and fear, some feelings of guilt that she hadn't said anything for so long." The child "had nightmares and drew pictures." Because the child was so young, Purdy primarily used "non-directive, child-centered play therapy." Over defense counsel's objection, Purdy testified that the child demonstrated with dolls what had happened

4

to her. Purdy also testified over objection about a drawing the child made of "some toys that had been used with her."

Law enforcement officers seized two vibrators—one lime green and the other black with multihued rhinestones—from Prestiano's home during a search. A forensic analyst with the Texas Department of Public Safety analyzed the sex toys for DNA. Two samples taken from the green vibrator showed that DNA from two people were present, and the child could not be excluded as a "possible contributor" to this mixture of DNA. Two samples from the other vibrator showed mixtures of DNA from two and three people respectively. The child could not be excluded from these samples, either.

Prestiano took the stand in his own defense. He testified that he babysat the child "quite a bit" at her parents' home. He denied touching her inappropriately, kissing her "anywhere that would have seemed inappropriate," or using a vibrator on her. He acknowledged that the green and black vibrators were his. As an explanation for the DNA evidence, Prestiano stated that the child discovered the green vibrator after going through his backpack, which he usually carried with him. He was not certain if she also had come across the black vibrator, or how she did so if she did, but indicated that it also was in his backpack. He testified that he had not realized that the vibrators were in the backpack, explaining that he thought that he "had thrown those out more than once" but that they kept turning up. He said that

5

the vibrators "may have been in there for years" and that he had "thought they were long gone." When the child found the green vibrator and showed it to him, Prestiano told her that it was a "toy lipstick" but she nonetheless asked: "'Is it for,' and motioned down." Prestiano explained that that he had seen the child use her own toys "on her genitals." According to him, the child asked him questions of an adult or sexual nature that made him uncomfortable "quite frequently." He further testified that the child was generally naked at home, saying that it "was rare that she ever had clothes on."

The trial court found Prestiano guilty of the three counts, and it entered separate judgments of conviction for each one. It assessed his punishment at 50 years of confinement on each count and ordered that the sentences run concurrently.

## DISCUSSION

### I.  Legal Sufficiency

Prestiano contends that there is insufficient evidence to sustain his conviction for the third count of aggravated sexual assault of a child, in which the State alleged that he penetrated the child's mouth with his penis. The State disagrees but further responds that if the court agrees with Prestiano, it should reform his conviction to one for aggravated sexual assault of a child by contact. Prestiano contends that the court cannot do so because aggravated sexual assault of a child by contact is not a lesser-included offense of aggravated sexual assault of a child by penetration.

## A.    Standard of review and applicable law

In a legal-sufficiency review, we view the evidence in the light most favorable to the judgment to determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (relying on *Jackson v. Virginia*, 443 U.S. 307 (1979)). In a bench trial, when the trial court sits as the sole factfinder, it alone assesses the credibility of the witnesses and decides how much weight to give each witness's testimony, which it may choose to believe or disbelieve in whole or part. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1972). We defer to the trial court's resolution of conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The statute criminalizing aggravated sexual assault of a child sets forth several distinct offenses. *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). A person may commit an aggravated sexual assault of a child in several ways, including by intentionally or knowingly causing:

- the child's mouth to contact his penis, or
- the penetration of the child's mouth by his penis,

if the child is younger than 14 years of age, regardless of whether the person knew the child's age. *See* TEX. PENAL CODE § 22.021(a)(1)(B), (a)(2)(B); *Smith v. State*,

340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The uncorroborated testimony of the child is sufficient, standing alone, to support a conviction. *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The child need not directly and explicitly testify as to contact or penetration with the same clarity and ability of an adult witness to prove these facts beyond a reasonable doubt. *See Villalon v. State*, 791 S.W.2d 130, 133–35 (Tex. Crim. App. 1990).

**B.  Analysis**

In the third count of the indictment, the State alleged that Prestiano intentionally penetrated the child's mouth with his penis. The child's testimony was the supporting evidence on this subject. In response to questions posed by the State, the child testified as follows:

Q.  Did any part of you ever touch his private part?

A.  I think my finger and my mouth, but he forced me to do it.

Q.  You're not in trouble, babe.

A.  I know.

Q.  Okay. So, did his private part touch your mouth? Did it ever go inside of your mouth?

A.  I think it just touched it a little bit.

* * *

Q.  His private part touched your mouth?

A.  Yes, I think.

8

"Penetration" is not defined by statute. The Court of Criminal Appeals has therefore afforded this term its ordinary meaning in the context of aggravated sexual assault, noting that it means "to enter into" or "to pass through." *Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015) (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). This definition distinguishes penetration from "mere contact with the outside of an object." *Vernon*, 841 S.W.2d at 409; *accord Villa v. State*, 417 S.W.3d 455, 461–62 (Tex. Crim. App. 2013). Penetration of the mouth thus occurs whenever an object parts the lips and passes into or through them. *See, e.g.*, *Dixon v. State*, 886 S.W.2d 852, 856 (Tex. App.—Beaumont 1994, pet. ref'd) (female defendant who forced child to perform oral sex on her penetrated child's mouth with her sexual organ as her labia was in child's mouth); *see also Vernon*, 841 S.W.2d at 408–10 (evidence that defendant inserted finger into child's outer labia but not into vagina sufficed to prove penetration); *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976) (insertion of penis between labia suffices to show penetration even if vagina not entered).

The child testified that Prestiano touched her mouth with his penis. Touching ordinarily connotes contact. *See IslasMartinez v. State*, 452 S.W.3d 874, 877–79 (Tex. App.—Dallas 2014, pet. ref'd) (undefined term "contact" synonymous with "touching" in context of aggravated sexual assault). Because the word "mouth" encompasses not only the lips but also the tongue, gums, teeth, and cavity containing

9

these parts, the child's testimony that Prestiano touched her mouth with his penis conceivably could mean either contact or penetration. *See Johnson v. State*, 882 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (affording statutorily undefined term "mouth" its ordinary meaning in context of aggravated sexual assault). When asked whether Prestiano touched her mouth with his penis or placed it inside her mouth, however, the child responded that his penis "just touched it a little bit." Viewed in the context of these questions distinguishing between touching the mouth and placement inside of the mouth, the child's testimony—even allowing for her young age and limited ability to articulate the nature of Prestiano's sexual abuse—cannot support a finding of penetration. On this record, a factfinder could do no more than speculate as to whether penetration or mere contact occurred, and the factfinder "is not permitted to draw conclusions based on speculation because doing so is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.").

We thus hold that legally insufficient proof supports Prestiano's conviction under count three of the indictment for aggravated sexual assault by penetration.

## C.    Reformation

Prestiano contends that the legal insufficiency of the evidence as to the third count requires us to reverse that conviction and render a judgment of acquittal. Rather than acquit Prestiano, the State contends that we must reform his conviction to the offense of aggravated sexual assault by contact, which the State argues is a lesser-included offense of aggravated sexual assault by penetration. Prestiano replies that aggravated sexual assault by contact is not a lesser-included offense.

When an appellate court finds the evidence legally insufficient to prove an element of the charged offense, but the factfinder necessarily found the defendant guilty of a lesser-included offense for which the evidence is sufficient, the appellate court must reform the judgment to reflect conviction for the lesser-included offense. *Lee v. State*, 537 S.W.3d 924, 927 (Tex. Crim. App. 2017). An offense is a lesser-included offense of another if, among other things, "it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. art. 37.09(1). To decide whether Prestiano's conviction for aggravated sexual assault by penetration should be reformed to a one for aggravated sexual assault by contact, we therefore must answer two questions:

(1) in convicting Prestiano of aggravated sexual assault by penetration, must the trial court sitting as factfinder have necessarily found every element required to convict him of aggravated sexual assault by contact; and

(2) is there legally sufficient evidence to support a conviction for aggravated sexual assault by contact?

11

*See Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014). If we answer these questions in the affirmative, then we must reform Prestiano's conviction as the State advocates. *Id.* Otherwise, we must render a judgment of acquittal as to the third count as Prestiano advocates. *See id.*

The State maintains that we must answer the first question in the affirmative because the offenses of aggravated sexual assault by contact and aggravated sexual assault by penetration differ only in the degree of physical invasion involved, with the latter always factually subsuming the former. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(ii), (v) (penile penetration of the mouth versus penile contact with the mouth); *Maldonado v. State*, 461 S.W.3d 144, 149 (Tex. Crim. App. 2015) (noting that "penetration cannot physically occur in the absence of contact"). We agree with the State.

Though criminalized by the same statute and subject to the same range of punishment, aggravated sexual assault by contact is a lesser-included offense of aggravated sexual assault by penetration because the only thing separating the two offenses is the degree of physical invasion. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(ii), (v); *Maldonado*, 461 S.W.3d at 149; *see also Hicks v. State*, 372 S.W.3d 649, 657–58 (Tex. Crim. App. 2012) (holding that "the range of punishment is irrelevant in deciding whether an offense is a lesser-included offense" and concluding that reckless aggravated assault was lesser-included offense of

intentional or knowing aggravated assault even though offenses are criminalized by same statute and impose same range of punishment); *Ex parte Pruitt*, 233 S.W.3d 338, 348 (Tex. Crim. App. 2007) (acts of genital-to-genital contact incidental to or subsumed by acts of penetration "are lesser-included offenses of these incidents of penetration"). The trial court necessarily found every element required to convict Prestiano of aggravated sexual assault by contact because its elements and the elements of aggravated sexual assault by penetration are identical but for the distinction between contact and penetration and "penetration cannot physically occur in the absence of contact." *Maldonado*, 461 S.W.3d at 149; *see also Jourdan v. State*, 428 S.W.3d 86, 97 (Tex. Crim. App. 2014) (defendant could not have penetrated child's sexual organ without first contacting it and therefore jury that found penetration necessarily would have found contact as well).

As to the second question, the child testified that Prestiano touched her mouth with his penis. Her testimony is legally sufficient evidence to support a conviction for aggravated sexual assault by contact. *See Gonzalez*, 522 S.W.3d at 57. Having answered both questions in the affirmative, we must reform the judgment to reflect a conviction for this lesser-included offense rather than rendering a judgment of acquittal as to count three. *See Thornton*, 425 S.W.3d at 300.

13

## II.    Hearsay Objections

Prestiano contends that the trial court erred in overruling his hearsay objection to a picture of two vibrators that the child drew in therapy. He likewise contends that the trial court erred in admitting Purdy's testimony that the child drew the vibrators to show Purdy the sex toys that Prestiano used on the child. The State responds that the drawing and Purdy's characterization of it are not hearsay or else are admissible under the exception for then-existing mental, emotional, or physical condition. The State further responds that any possible error in admitting the drawing and Purdy's testimony about it was harmless.

### A.    Standard of review and applicable law

We review evidentiary rulings for abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id.* But even if an evidentiary ruling is erroneous, it is not a ground for reversal unless it affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Substantial rights are affected if the error had a substantial and injurious influence on the judgment. *Coble*, 330 S.W.3d at 280.

Hearsay—out-of-court statements offered for their truth—are generally inadmissible. *See* TEX. R. EVID. 801–02; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). An exception to this general rule exists for statements

14

expressing the speaker's then-existing state of mind or emotional, sensory, or physical condition, but this exception does not encompass statements of "memory or belief to prove the fact remembered or believed." TEX. R. EVID. 803(3); *see Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000) (declarant's out-of-court statement that she was afraid of defendant admissible under state-of-mind exception); *Gibbs v. State*, 819 S.W.2d 821, 837 (Tex. Crim. App. 1991) (declarant's out-of-court statement not admissible under state-of-mind exception because it was nothing more than a statement of memory to prove fact remembered).

## B.    Analysis

The child testified that Prestiano showed her the sex toys and inserted them into her vagina. She independently recalled the green one in her testimony. The actual vibrators were admitted into evidence without objection, as was a photograph of them. The child recognized both vibrators when she was shown the photograph.

The child's drawing depicts two vibrators, one of which is green. It also contains handwritten notes; however, the copy in the record is illegible, there was no testimony as to the notes' content, and the parties do not discuss the notes in their briefs. The child testified that she made the drawing in therapy. But the State did not introduce the drawing into evidence during her testimony. Her therapist, Purdy, identified the drawing and explained that the child "wanted to show me some toys that had been used with her." At this point, defense counsel objected that Purdy's

testimony was hearsay, and the trial court sustained the objection. After asking Purdy whether this drawing and several others were indicative of the child's "then existing state of mind and emotional condition," the State again offered the drawing of the toys into evidence. When the State did so, defense counsel again objected:

> Your Honor, I'm objecting to this. This was done over two months after the initial outcry, and I believe that it's improper bolstering. It's allowing the child witness to testify again through her counselor, and I would object to it.

The trial court overruled this objection. Purdy then explained once again that the child said that "she wanted to draw pictures of some toys that were used." Defense counsel objected again, stating that both the drawing and Purdy's testimony had "nothing to do with [the child's] state of mind." The prosecutor rejoined that, "State's position is that it has everything to do with her state of mind. That's why she was in there in the first place. It's what she has had to work through from that moment to now." The trial court overruled the defense's objection.

Whether "bolstering" remains a valid objection is in doubt. *See Rivas v. State*, 275 S.W.3d 880, 886–87 (Tex. Crim. App. 2009). Even if valid, a "bolstering" objection might not preserve error as to hearsay. *See id.* ("bolstering" is an inherently ambiguous objection with roots in multiple evidentiary rules, including the hearsay rule); *see also Williams v. State*, 927 S.W.2d 752, 763 (Tex. App.—El Paso 1996, pet. ref'd) ("bolstering" objection did not preserve contention that videotape was not admissible under hearsay exclusion for prior consistent statements offered to rebut

charge of recent fabrication or improper influence or motive). *But see State v. Balderas*, 915 S.W.2d 913, 919 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) ("Bolstering is generally a hearsay objection used when a party improperly offers evidence to support an unimpeached witness or to add credence or weight to earlier-introduced evidence."). Assuming that Prestiano's "bolstering" objection preserved his hearsay argument about the drawing for appeal, however, the admission of the drawing into evidence is not a ground for reversal.

We agree with Prestiano that the drawing is hearsay. The definition of hearsay, which generally consists of out-of-court statements offered in evidence for the truth of the matter asserted, encompasses "nonverbal conduct that a person intended as a substitute for verbal expression." TEX. R. EVID. 801(a), (d). The child made this drawing to communicate with her therapist about what had happened to her and thus her drawing was nonverbal conduct as defined in the hearsay rule. *See* TEX. R. EVID. 801(a); *McMinn v. State*, 558 S.W.3d 262, 269 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (distinguishing decision that held child's drawing made in therapy was hearsay). Accordingly, unless an exception to the hearsay rule applies, the child's drawing is inadmissible hearsay. *See* TEX. R. EVID. 802.

The State contends that the hearsay exception for then-existing mental, emotional, or physical condition applies to the drawing. *See* TEX. R. EVID. 803(3). But this exception contains its own exception. Under Rule 803(3), a statement

regarding the witness's then-existing state of mind or emotional, sensory, or physical condition remains subject to exclusion under the hearsay rule if it is "a statement of memory or belief to prove the fact remembered or believed." *Id.*; *see Delapaz v. State*, 228 S.W.3d 183, 207 (Tex. App.—Dallas 2007, pet. ref'd) (statements of memory or belief offered to prove fact remembered or believed are themselves excepted from state-of-mind exception to hearsay rule). The relevance of the child's drawing at trial was as an expression of her memory to prove the fact remembered, specifically that Prestiano used sex toys on her. Thus, the drawing is not admissible under the hearsay exception for then-existing mental, emotional, or physical condition. *See* Tex. R. Evid. 803(3); *Glover v. State*, 102 S.W.3d 754, 762–63 (Tex. App.—Texarkana 2002, pet. ref'd) (mother's testimony as to her underage daughter's out-of-court statements about sex with defendant not admissible under Rule 803(3) as purpose of evidence was to prove that defendant had sex with daughter); *cf. Salazar v. State*, 127 S.W.3d 355, 362–63 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (sexually abused children's statements in therapy that they were sad, angry, and fearful were admissible under hearsay exception for then-existing state of mind).

It is possible that evidence like the child's drawing could be admitted under another exception to the hearsay rule. Our concurring colleague contends that the hearsay exception for statements made for medical diagnosis or treatment applies.

18

*See* TEX. R. EVID. 803(4). We decline to decide whether this exception applies under the circumstances of this case, however, for two interrelated reasons. First, the State did not urge this exception at trial and has neither cited Rule 803(4) nor argued that it applies on appeal. Second, because the State did not urge Rule 803(4) below, the record lacks the evidentiary predicate required to assess the drawing's admissibility under this exception. *See Taylor v. State*, 268 S.W.3d 571, 588–91 (Tex. Crim. App. 2008) (statements made by sexually abused children in therapy admissible under Rule 803(4) on showing that they were aware that their statements were made for diagnosis or treatment and that proper diagnosis or treatment depended on their truthfulness as well as showing that particular statements at issue were pertinent to diagnosis or treatment such that reasonable therapists would rely on these statements in diagnosing and treating patients); *accord Munoz v. State*, 288 S.W.3d 55, 58–60 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We therefore proceed to consider whether the admission into evidence of the drawing, which was hearsay for which the State failed to establish an applicable hearsay exception, was harmful. *See Martinez v. State*, 178 S.W.3d 806, 815–16 (Tex. Crim. App. 2005) (remanding to court of appeals to conduct harm analysis where State failed to carry its burden to show applicability of exception to hearsay rule).

When the drawing is considered in the context of the entire record, we are confident that its admission did not affect Prestiano's substantial rights. The child

19

testified about the vibrators and Prestiano's use of them independently of the drawing. Her drawing of the sex toys was introduced only after she had testified about them. The vibrators themselves, as well as a photograph of them, were admitted into evidence without objection. Though he denied using the sex toys on the child, Prestiano conceded that he had them with him on at least one occasion when babysitting her. On this record, the child's drawing was cumulative and was the least damning evidence on this subject. We hold that its admission was harmless beyond a reasonable doubt. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (any error in admitting hearsay was "harmless in light of other properly admitted evidence proving the same fact"); *Lamerand v. State*, 540 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (any error in admission of medical report containing statements made by child to doctor was harmless given that child herself testified without objection about sexual abuse and identified defendant as perpetrator); *Quinonez-Saa v. State*, 860 S.W.2d 704, 707 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (even if autopsy photos were not rendered admissible under exceptions to hearsay rule, their admission was harmless because they were cumulative).

Purdy's explanation of the drawing—that the child made it because she wanted to show Purdy "toys that had been used with her"—is inadmissible hearsay for the same reason that the drawing itself is inadmissible. As with the drawing,

20

however, we are confident that when viewed in light of the entire record, the admission of this testimony did not affect Prestiano's substantial rights. The objectionable testimony consists of a single-sentence answer made in response to one question. By the time Purdy testified about the drawing's purpose, the child already had testified about the vibrators. She testified that Prestiano had sexually abused her with these sex toys. The vibrators themselves and a photograph of them had been admitted into evidence. Further, without objection, the child herself had testified that she drew the sex toys in therapy with her counselor. On this record, we conclude that Purdy's testimony did not have a substantial and injurious influence on the judgment and therefore was harmless. *See Coble*, 330 S.W.3d at 280.

## III.   Ineffective Assistance

Prestiano contends that his trial attorney rendered ineffective assistance by failing to object to Purdy's testimony about the child's use of dolls and drawings to communicate about the sexual abuse during counseling and several of the child's drawings that were admitted as exhibits. He argues that this evidence was hearsay and that no exception to the hearsay rule was applicable. The State responds that defense counsel's performance was not deficient because the evidence was admissible. The State further contends that, even if deficient, defense counsel's performance did not adversely affect the outcome of Prestiano's trial.

21

## A. Standard of review and applicable law

We assess claims of ineffective assistance under the test articulated by the United State Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Under this test, Prestiano must establish two elements. First, he must prove by a preponderance of the evidence that his lawyer's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* Second, he must show that his lawyer's deficient performance prejudiced his defense by demonstrating that there is a reasonable probability that the result would have differed or a probability that suffices to undermine confidence in the outcome. *Id.*

We must presume that Prestiano's lawyer discharged his duties within prevailing professional norms and made the choices he did based on sound trial strategy. *Id.* at 142–43; *Macias v. State*, 539 S.W.3d 410, 415–16 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Thus, we cannot find that Prestiano's lawyer rendered ineffective assistance unless the trial record affirmatively demonstrates that his performance was deficient when viewed in the context of the totality of the representation and without the benefit of hindsight. *Lopez*, 343 S.W.3d at 142–43. If such evidence of deficiency is lacking, we must assume that his lawyer's choices resulted from trial strategy if any reasonably sound strategic motivation is conceivable. *Id.* at 143.

**B.    Analysis**

Prestiano moved for a new trial but did not assert ineffective assistance of counsel. The trial record therefore is silent as to his lawyer's decision not to object to portions of Purdy's testimony and the corresponding exhibits.

The Court of Criminal Appeals addressed a similar ineffective-assistance claim on a similarly silent record in *Lopez*. A jury convicted Lopez of aggravated sexual assault of a child and assessed punishment at 50 years' confinement. 343 S.W.3d at 139. At trial, three witnesses testified as to what the child told them about the same events. *Id.* at 140. Thus, the testimony of two of these witnesses was improper, constituting inadmissible hearsay that merely bolstered the child's own testimony. *Id.*; *see also* TEX. CODE CRIM. PROC. art. 38.072. On appeal, Lopez complained of his trial lawyer's failure to invoke the provisions of Article 38.072 to limit the amount of hearsay admitted against him. 343 S.W.3d at 140. The record was "silent as to trial counsel's reason for not objecting to the improper testimony." *Id.* The State responded with several possible theories, including the possibility that Lopez's trial lawyer may have made a tactical decision to allow all three witnesses to testify in order to expose inconsistencies in the child's outcries. *Id.* at 141. The Court of Criminal Appeals held that, because the record was silent as to defense counsel's reason for allowing the similar testimony without objection, Lopez failed to show that his lawyer's performance was deficient. *See id.* at 143–44; *see also*

*Macias*, 539 S.W.3d at 417 (despite State's concession that doctor's opinion testimony as to child's truthfulness was improper, defendant failed to prove his lawyer rendered ineffective assistance where trial record was silent as to counsel's reason for not objecting).

As in *Lopez*, it is conceivable that Prestiano's trial lawyer made a strategic decision to refrain from objecting to Purdy's hearsay testimony about the child's statements, and the corresponding exhibits, to reveal any inconsistencies in the child's account of the sexual abuse. On this record, we must assume that Prestiano's lawyer's inaction resulted from a tactical choice to incur the risk posed by the hearsay in exchange for the opportunity to expose inconsistencies in the child's testimony and to challenge her credibility. Prestiano has not controverted the strong presumption that his lawyer's performance was within prevailing professional norms and his ineffective assistance claim therefore fails because he has not proven by a preponderance of the evidence that his lawyer's performance was deficient. *See Lopez*, 343 S.W.3d at 143–44; *Macias*, 539 S.W.3d at 417.

## CONCLUSION

We reform Prestiano's judgment of conviction under the third count of the indictment to reflect a conviction for the lesser-included offense of aggravated sexual assault of a child by contact and affirm his judgments of conviction under the other two counts of the indictment. We remand to the trial court for a new

punishment hearing. *See Lee*, 537 S.W.3d at 927 ("When an appellate court finds the evidence insufficient to establish an element of the charged offense, but the jury necessarily found the defendant guilty of a lesser offense for which the evidence is sufficient, the appellate court must reform the judgment to reflect the lesser-included offense and remand for a new punishment hearing."); *Flores v. State*, 888 S.W.2d 187, 193 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that, while it was reasonable to expect that trial court would assess same punishment for lesser-included offense, remand for new punishment hearing was required because court of appeals could not say so with certainty).

 

Gordon Goodman
Justice

Panel consists of Justices Keyes, Lloyd, and Goodman.

Justice Keyes, concurring in part and dissenting in part.

Publish.  TEX. R. APP. P. 47.2(b).