# NO. 12-23-00141-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES DILBERT BOZEMAN, JR.,* *APPELLANT* | § | *APPEAL FROM THE 8TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

James Dilbert Bozeman, Jr. appeals his conviction for continuous sexual abuse of a child. In three issues, Appellant argues that the evidence is insufficient to support his conviction, his due process rights were violated by ex parte communications, and the trial court erred by omitting a subsumption doctrine instruction from the jury charge. In a cross-issue, the State argues that the court erred by ordering its work product disclosed. We affirm.

## BACKGROUND

Appellant was charged by indictment with continuous sexual abuse of a child.[1] He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that when E.O. was in kindergarten, she and her mother moved into Appellant's home with him and his former stepdaughter, S.Z. While they lived there, Appellant committed many acts of sexual abuse against E.O., including touching and putting his finger in her vagina, touching her mouth with his penis, and causing her to touch his

---

[1] A first-degree felony punishable by imprisonment for a term of life, or not more than ninety-nine years or less than twenty-five years. *See* TEX. PENAL CODE ANN. §§ 21.02(b)(1), (b)(2)(A), (h) (West Supp. 2023).

penis with her mouth and hands. Later, after E.O. and her mother moved out of Appellant's home, E.O. disclosed the abuse to a counselor, who reported it to the authorities.

Ultimately, the jury found Appellant "guilty" as charged, and the trial court assessed his punishment at imprisonment for a term of fifty years and a $10,000 fine. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In Appellant's first issue, he argues that the evidence is insufficient to support his conviction. Specifically, he contends the State produced no evidence that the abusive acts occurred before the indictment was presented.

### Standard of Review and Applicable Law

The *Jackson v. Virginia*[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *Id.* This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the

---

[2] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Analysis**

Appellant concedes the evidence demonstrates that

> 1) the offense occurred over a period of more than thirty days (by testimony that the assaults occurred in the summer but in other seasons as well);
>
> 2) E.O. was under the age of fourteen and Appellant was over seventeen (through pictures in the State's Exhibits); and
>
> 3) the assaults occurred.

However, Appellant contends the evidence is insufficient to support his conviction because it fails to establish the date of the last abusive act and, therefore, fails to demonstrate that the acts occurred before November 14, 2022, the date the indictment was returned. He acknowledges that if the State asked E.O., "[D]id all these acts occur before you moved out of Appellant's home?" and she answered, "Yes," the evidence would be sufficient to support the verdict.

To prove Appellant guilty of continuous sexual abuse of a child as charged in the indictment, the State was required to prove that, during a period thirty or more days in duration, when Appellant was seventeen years of age or older and E.O. was younger than fourteen years of age, Appellant committed two or more of the following acts:

> 1) Aggravated Sexual Assault of Child—On or about the 15th day of January, 2019, . . . [Appellant] intentionally or knowingly cause[d] the sexual organ of E.O. . . . to contact [Appellant's] sexual organ;
>
> 2) Indecency with Child Sexual Contact—On or about the 15th day of January, 2019, . . . [Appellant], with the intent to arouse or gratify [Appellant's] sexual desire, engage in sexual contact with E.O. . . . by touching [E.O.'s] genitals;
>
> 3) Indecency with Child Sexual Contact—On or about the 15th day of January, 2019, . . . [Appellant], with the intent to arouse or gratify [Appellant's] sexual desire, cause[d] E.O. . . . to engage in sexual contact by causing [E.O.] to touch [Appellant's] genitals;
>
> 4) Aggravated Sexual Assault of Child—On or about the 15th day of January, 2019, . . . [Appellant] intentionally or knowingly cause[d] the penetration of the sexual organ of E.O. . . . by [Appellant's] finger;
>
> 5) Aggravated Sexual Assault of Child—On or about the 1st day of June, 2019, . . . [Appellant] intentionally or knowingly cause[d] the sexual organ of E.O. . . . to contact [Appellant's] sexual organ;

6) Indecency with Child Sexual Contact—On or about the 1st day of June, 2019, . . . [Appellant], with the intent to arouse or gratify [Appellant's] sexual desire, engage in sexual contact with E.O. . . . by touching [E.O.'s] genitals;

7) Indecency with Child Sexual Contact—On or about the 1st day of June, 2019, . . . [Appellant], with the intent to arouse or gratify [Appellant's] sexual desire, cause[d] E.O. . . . to engage in sexual contact by causing [E.O.] to touch [Appellant's] genitals;

8) Aggravated Sexual Assault of Child—On or about the 1st day of June, 2019, . . . [Appellant] intentionally or knowingly cause[d] the penetration of the sexual organ of E.O. . . . by [Appellant's] finger;

9) Aggravated Sexual Assault of Child—On or about the 1st day of June, 2019, . . . [Appellant] intentionally or knowingly cause[d] the penetration of the mouth of E.O. . . . by [Appellant's] sexual organ;

10) Aggravated Sexual Assault of Child—On or about the 15th day of January, 2020, . . . [Appellant] intentionally or knowingly cause[d] the sexual organ of E.O. . . . to contact [Appellant's] sexual organ;

11) Indecency with Child Sexual Contact—On or about the 15th day of January, 2020, . . . [Appellant], with the intent to arouse or gratify [Appellant's] sexual desire, engage in sexual contact with E.O. . . . by touching [E.O.'s] genitals;

12) Indecency with Child Sexual Contact—On or about the 15th day of January, 2020, . . . [Appellant], with the intent to arouse or gratify [Appellant's] sexual desire, cause[d] E.O. . . . to engage in sexual contact by causing [E.O.] to touch [Appellant's] genitals;

13) Aggravated Sexual Assault of Child—On or about the 15th day of January, 2020, . . . [Appellant] intentionally or knowingly cause[d] the penetration of the sexual organ of E.O. . . . by [Appellant's] finger.

*See* TEX. PENAL CODE ANN. §§ 21.02(b)(1), (b)(2)(A), (c) (West Supp. 2023). Generally, the state need not prove an offense was committed on the date alleged in the indictment but may prove it was committed on any date prior to the return of the indictment and within the limitations period. *Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd).

E.O. testified that she was in the fifth grade at the time of trial. When she lived with Appellant, he committed multiple acts of sexual abuse, sometimes during the school week, more often during the summer, and during more than one summer. Appellant committed the last act the summer she and her mother moved out of his home, between her second and third grade years. E.O.'s mother testified that they moved out in August 2020. This evidence is sufficient to show that Appellant committed the offense before the indictment was returned on November 14, 2022. *See id*. Accordingly, we overrule his first issue.

4

In Appellant's second issue, he argues that his due process rights were violated by the State's ex parte communications with the trial court.

## Applicable Law

"An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter with the judge." *Youkers v. State*, 400 S.W.3d 200, 206 (Tex. App.—Dallas 2013, pet. ref'd). Judges are prohibited from permitting or considering ex parte communications from a party to pending litigation unless expressly authorized by law. TEX. CODE JUD. CONDUCT, Cannon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B; *In re City of Lubbock*, 666 S.W.3d 546, 556 (Tex. Crim. App. 2023). Similarly, lawyers are prohibited from communicating with judges about pending matters unless authorized by law. TEX. DISCIPLINARY RULES PROF'L CONDUCT, 3.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A-1; *Lubbock*, 666 S.W.3d at 557. The prohibition of ex parte communications was instituted to preserve judicial impartiality and assure all legally interested parties' right to be heard. *Lubbock*, 666 S.W.3d at 557-58.

## Analysis

Appellant complains of a pretrial discovery related email the prosecutor sent the trial judge without including Appellant as a recipient. While preparing to present E.O.'s case to the grand jury, the State interviewed S.Z. and determined that she was a second victim. The State presented both cases to the grand jury, which returned an indictment in each case. Prior to trial, prosecutors and defense counsel engaged in discovery related correspondence by email, often with the trial judge included as a carbon-copy recipient. Because the allegations in S.Z.'s case were not investigated by a law enforcement agency, Appellant lacked the benefit of a police report detailing those allegations. Consequently, Appellant requested copies of the notes taken by prosecutors during witness interviews. The State maintained that the notes were work product and not discoverable but agreed to deliver them to the judge for an in-camera review. The State then sent the following message to the judge by email, excluding Appellant from the correspondence:

> Dear Judge Northcutt:
>
> I have spoken with Andrew and Jodi regarding an in-camera review of our notes, and they are good with you reviewing the records.

My position as set out below is the notes are simply how we perceived the conversations—when a conversation was had—and other notes may be written based upon a review of the initial notes taken from the conversation; they've neither been adopted, reviewed, nor recorded.

As such, any such notes would not form a basis to question a witness on the witness stand about their conversation with our office because it's not their statement and would simply, be speculation, and create confusion about whether it was ever said at all.

Their concern and focus I believe, however, is those witnesses we've talked to, especially those who have told us about sexual offenses and bad acts committed by the defendant listed in the extraneous notice and the other indictments, who did not provide a witness statement to law enforcement.

In our normal process of talking to the victim of the offense to be tried, we learned of other persons who may have additional information and talked to them.

Specifically, we've talked to other witnesses SZ, TS, and BH, and they told us about other offenses and bad acts set out in extraneous [sic] and indictments, but they have not given a formal statement. Additionally, the mother of the victim provided a witness statement, but subsequently, has provided additional information to us which is not in the original statement.

I believe they will be filing a motion to compel production, and I would like to send you the pdf file containing our notes for you to review if you wouldn't mind. I've numbered the pages so we can make a record. We were just thinking the sooner the better.

Respectfully,

Robert

The State attached the notes to a subsequent email to the judge, again excluding Appellant. The next day, the judge notified the parties by email that he decided the defense should have access to the notes and attached the notes to the message.

On appeal, Appellant argues that the email message quoted above constitutes an ex parte communication concerning a contested issue, and the State and trial court violated his due process rights by engaging in it. He contends that the communication evinces an effort to create bias in favor of the State without providing Appellant an opportunity to respond. Appellant asserts, without citation to authority, that "[t]he use of ex parte communications infringes on the defendant's due-process right to a hearing." He "concede[s] that he cannot establish harm under [Texas] Rule [of Appellate Procedure] 44.2(b), but contends that the burden falls to the State under Rule 44.2(a)."

The State argues that the email message was not ex parte because it was sent with Appellant's knowledge and consent. The State further contends that we should overrule Appellant's issue because it is not preserved for our review and the error, if any, is harmless.

The State questions whether it has the burden to show harmlessness but argues there is no conceivable harm because the trial court delivered all the notes to Appellant. We agree with the State on this latter point.

Assuming the trial court erred by permitting and considering the State's email message, the error is harmless in this case under either appellate review standard. Under Rule 44.2(b), a nonconstitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). Under Rule 44.2(a), an appellate court must reverse a judgment of conviction or punishment unless it determines beyond a reasonable doubt that a constitutional error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). Here, despite defense counsel's exclusion from the communication, the court rejected all the State's arguments and delivered all the notes to Appellant. Thus, any attempt by the State to use ex parte communication with the judge to create bias in its favor was fruitless. Under these circumstances, we conclude beyond a reasonable doubt that any error based on the email communication neither affected Appellant's substantial rights nor contributed to his conviction or punishment. *See* TEX. R. APP. P. 44.2(a), (b). Accordingly, we overrule Appellant's second issue.

### CHARGE ERROR

In Appellant's third issue, he argues that the trial court erred by excluding a subsumption doctrine instruction from the jury charge.

### Standard of Review

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the charge. ***Id***. Then, if charge error exists, the court must determine whether harm sufficient to require reversal exists. ***Id.*** at 731-32. The standard for determining harm sufficiency depends on whether the appellant objected to the error at trial. ***Id.*** at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This means no more than that there must be some harm to the accused from the error. ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An

appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Id.* "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

**Subsumption Doctrine**

The subsumption doctrine applies in some child sex offense cases to prevent the separate prosecution of multiple offenses. *See Patterson v. State*, 152 S.W.3d 88, 91-92 (Tex. Crim. App. 2004). The Double Jeopardy Clause bars multiple convictions based on a single continuous act. *Maldonado v. State*, 461 S.W.3d 144, 149 (Tex. Crim. App. 2015). A conviction for a sexual offense against a child bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense. *Patterson*, 152 S.W.3d at 92. "An offense may be factually subsumed when there is a single act that cannot physically occur in the absence of another act." *Maldonado*, 461 S.W.3d at 149. For example, "indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case." *Patterson*, 152 S.W.3d at 92.

**Analysis**

Appellant argues that the trial court erred by excluding a subsumption doctrine instruction because it is the law applicable to the case. He appears to argue that without such an instruction, jurors could have found that he committed only one count of indecency with a child by touching E.O.'s genitals and one count of aggravated sexual assault by penetrating her sexual organ, with the former offense being subsumed by the latter. Appellant concedes he did not object to the charge but contends the instruction's exclusion caused him egregious harm because (1) the jurors were instructed that they need agree only that Appellant committed two or more of the alleged acts and were not required to determine whether the genital touching and penetration of the sexual organ were the same act, (2) no specific timing evidence of the acts was adduced, and (3) neither the State nor the trial court explained the subsumption doctrine to the jury.

The State does not dispute that the subsumption doctrine may be the law applicable to a continuous sexual abuse case but argues the issue is irrelevant because the offense requires two or more acts of sexual abuse committed during a period of at least thirty days. Even if the jury found that Appellant committed only two offenses, one of which theoretically could subsume the

other, the State argues, neither offense could be subsumed in fact because the offenses would necessarily have been committed at least thirty days apart.

We agree with the State. The jury could not have improperly convicted Appellant in this case based on the lack of a subsumption doctrine instruction in the charge. Therefore, assuming without deciding that the subsumption doctrine is the law applicable to the case, we conclude any error in excluding an instruction on it was not so egregious and did not create such harm as to deprive Appellant of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. Accordingly, we overrule Appellant's third issue.

## ORDER TO DISCLOSE WORK PRODUCT

In the State's cross-issue, it argues that the trial court erred by ordering its work product disclosed to defense counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2023). "The state is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment." *Id.* art. 44.01(c) (West 2018). The state need not file a notice of appeal when raising a cross-issue under Article 44.01(c). *Pfeiffer v. State*, 363 S.W.3d 594, 597 (Tex. Crim. App. 2012). Usually, the court of appeals may address such a cross-issue only if the defendant prevails in his appeal and the case will be remanded for further proceedings. *Id.* at 601. Here, the State asks that we address its cross-issue only if Appellant prevails in one of his issues. Because Appellant does not prevail, we do not reach the State's cross-issue. *See id.*; TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered June 21, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 21, 2024**

**NO. 12-23-00141-CR**

**JAMES DILBERT BOZEMAN, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 8th District Court
of Rains County, Texas (Tr.Ct.No. 6399)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*